[Civ. No. 7515.   Third Dist.   Dec. 17, 1948.]

MORRIS FLENNAUGH, Plaintiff and Appellant, v. T. J. HEINRICH, Defendant and Appellant.

Porter & Ragland and Everette M. Porter for Plaintiff and Appellant.

Preston, Braucht & George and Howard C. George for Defendant and Appellant.

THOMPSON, J.—This is a suit for conversion of two trucks and trailers and two grape tanks. The defendant denied the material allegations of the complaint and filed a cross-complaint to foreclose a chattel mortgage and lien on the trucks and trailers, executed to First National Bank of Merced to secure plaintiff's promissory note in the sum of $11,805, which was assigned to the cross-complainant. The court found that the property was converted by the defendant as alleged, to plaintiff's damage in a specified sum. The court also found that plaintiff was indebted to the defendant and cross-complainant in the sum of $13,703.40, which he was entitled to offset against said damages for conversion, and that defendant was entitled to a decree quieting title in him to all the personal property described in the complaint. Judgment was rendered in favor of the defendant and cross-complainant, *quieting title* to the trucks and trailers and "other equipment described in the complaint," and decreeing that plaintiff take no money judgment. Plaintiff moved for a new trial, upon the hearing of which the defendant offered to stipulate that a new trial should be granted. The offer to so stipulate was rejected by the court, and the motion for new trial was denied. Plaintiff and defendant each appealed from the entire judgment.

The plaintiff contends that the findings and judgment are not supported by the evidence. He claims that the damages allowed by the court on account of the wrongful conversion of the property, as indicated by the segregated items found in the court's *opinion* which appears in the clerk's transcript are grossly inadequate to compensate him for the loss sustained. (Civ. Code, § 3336.)

The defendant contends that: (1) The complaint fails to adequately state a cause of action based on conversion since it is not alleged the plaintiff was the owner or entitled to possession of the property at the time charged; (2) The finding of the court to the effect that defendant wrongfully converted the property on October 12, 1946, is not supported by the evidence for the reason that the uncontradicted evidence shows that the property was placed in the possession of the defendant, and remained in his possession with the knowledge and consent of the plaintiff, and (3) No demand for the return of the property, as a necessary prerequisite to the maintenance of this action, was made by plaintiff.

We shall first consider the defendant's appeal:

■ The evidence shows that plaintiff is a Negro who lived on a ranch in Merced County. He was engaged in trucking and hauling farm produce. He owned a 1941 Mack truck and trailer valued at $5,400, and a 1939 Mack truck and trailer of the value of $7,000. Grape tanks had been installed on the trucks at a cost of $440. The vehicles were subject to an indebtedness of $7,000. Plaintiff was financially involved. He owed the Seaboard Finance Company $1,800 and the First National Bank of Merced the further sum of $11,805. To procure the last-mentioned loan he signed a note payable to the bank, dated August 28, 1946, secured by a chattel mortgage on the vehicles. The defendant endorsed and guaranteed that note. The mortgage provided for foreclosure and sale of the property in the event of default in any of the payments thereof. On September 10, 1946, plaintiff executed and delivered to the defendant powers of attorney authorizing the defendant to sign and transfer the certificates of ownership of the vehicles, and ratifying any action he might take with respect to the transfers of title. For default of payments, and upon demand, the note was subsequently paid in full by the defendant and assigned to him by the bank.

November 14, 1946, while the 1939 truck and trailer were in possession of the plaintiff, the vehicles were struck and badly damaged by a railway train at a crossing. A wrecking crew was sent by the insurer for the vehicles. Plaintiff was present when it arrived. He told them to remove the wrecked vehicles from the right of way. The vehicles were hauled to a Fresno shop and repaired. Plaintiff knew they were taken to that shop for repairs and he did not object. Those vehicles are still at that shop in Fresno. They were never in the possession of the defendant. The bill for repairs has not been paid. At the request of plaintiff, the defendant paid for insurance on both trucks and trailers the sum of $1,534. The bill for repairs of the 1939 truck was about $1,377. Plaintiff asked the repair man if it would be all right for him to take the truck and trailer if he raised the money to pay for repairs, and the repair man said he understood they were insured in the name of Heinrich and that they belonged to him. Plaintiff never thereafter saw the defendant about recovering possession of that truck and trailer and never made any demand upon him for their possession. It may not be held that the defendant wrongfully took or held possession of those vehicles.

■ The plaintiff employed Earl Jackson to drive the 1941 truck and trailer. He told Jackson that if he needed repairs

or money to go to Mr. Heinrich. On October 12th the truck needed repairs. Jackson took it to defendant's home. Heinrich told him to leave it there and he would take care of it. The plaintiff testified: "Well, my driver taken it by there one day to get some repair done on it and he told me when I came in up north." Plaintiff went to see Heinrich, but he did not seek or demand possession of the truck. They talked about defendant buying the truck and trailer. Plaintiff said the defendant "decided that he would buy that one off me." He said the defendant agreed to buy it and pay the bank $5,000 for it, to be credited on the $11,805 note of plaintiff which the defendant had endorsed and guaranteed. Plaintiff testified that he agreed to that plan. He said, "Well, if you will pay the bank the $5000, that will be just as good as giving me the check for it. And he [the defendant] said, 'Well, I will do that.' " The plaintiff testified positively that he sold that truck and trailer to the defendant for $5,000. He was asked, "And during all of that time you considered that this was Mr. Heinrich's truck, is that correct?" to which he replied, "Sure, that was the agreement that he and I made, that he would pay the $5,000.00 to the bank and it would be paid on the amount and reduced that much." That evidence refutes the finding and theory that defendant wrongfully took possession of or appropriated to his own use plaintiff's truck and trailer. The truck and trailer were left on defendant's premises. The plaintiff never requested possession of them. The plaintiff said that he never talked about the vehicles with defendant afterward.

The plaintiff testified that, while the vehicles were first insured in his name ". . . They cancelled my insurance because I was colored." He was unable to secure further insurance in his name, on that account, and the defendant paid $1,534 as premiums on renewal of the insurance on September 26, 1946.

This suit for conversion of the trucks, trailers and grape tanks was commenced in April or May, 1947. The complaint was couched in three counts. No demurrer to the amended complaint was filed. The defendant filed an answer denying the material allegations of the complaint. A cross-complaint was filed, setting up plaintiff's indebtedness to the defendant, together with the assignment of said note of $11,805, and chattel mortgage, asking for foreclosure of the mortgage and judgment for the debt due the defendant.

The court adopted findings determining that the defendant converted the property described in the complaint, as alleged,

and that, pursuant to paragraph II of the findings, the reasonable value was then the aggregate sum of $13,703.40, but that the sum of $2,656.85 thereof had been "repaid by plaintiff to defendant Heinrich for advances made by the latter for the use and benefit of the plaintiff and for the repair and upkeep of said equipment." In paragraph IV of the findings the court then determined that plaintiff was indebted to the defendant and cross-complainant in the sum of $13,703.40 "after crediting upon the total indebtedness the sum of $2,411.43, in the hands of cross-defendant, Underwriters at Lloyd's, London," and that, without decreeing foreclosure or sale of the properties as prayed for, the court also found that "title to the equipment described in plaintiff's amended complaint is vested in defendant Heinrich and is hereby quieted in said defendant." Judgment was rendered accordingly, quieting title in the defendant J. T. Heinrich, to all of said properties, and in and to the insurance policies, and the proceeds therefrom, and determining that plaintiff is entitled to no money judgment in said action.

We are of the opinion the findings are inconsistent, and that the findings and judgment are not supported by the evidence.

There is no merit in defendant's contention that the amended complaint fails to state a cause of action for the asserted reason that it is not alleged plaintiff was the owner and entitled to possession of the properties at the date of the conversion. The first cause of action alleged that plaintiff was the owner and entitled to possession of the 1941 truck and trailer on September 1, 1946, and that they were converted on October 12th of that year. The second cause alleged that plaintiff was the owner and entitled to possession of the grape tanks "on or about October 12, 1946," and that they were converted on that date. The third cause alleges that plaintiff was the owner and entitled to possession of the 1939 truck and trailer "on or about November 14, 1946," and that those vehicles were converted on that date. All of said findings were determined by the court to be true. There was no demurrer to the complaint. Defendant's failure to demur to the complaint, the recognition of plaintiff's ownership of the property at all times involved in the suit, by his affirmative allegations in the cross-complaint, and the trial of the case, without objection to evidence upon that question, as though the ownership of the truck and trailer mentioned in the first count had been properly stated, constituted a waiver of that

defect of pleading. (*Drullinger* v. *Erskine,* 71 Cal.App.2d 492, 500 [163 P.2d 48]; *Guastafson* v. *Byers,* 105 Cal.App. 584, 586 [288 P. 111]; 2 Cal.Jur. 245, § 72; 65 C.J. § 145, p. 87.) In the Drullinger case, *supra,* quoting with approval from 2 California Jurisprudence, page 245, it is said:

" 'It is unfair for a party to withhold an objection founded upon a defect, which, if pointed out in time, might be remedied, until it is too late to correct the defect, thereby inducing an opponent to rely upon his pleading as sufficient in order that he may have a fatal objection. Such course is a fraud upon justice and prevents a fair trial. It is therefore not tolerated.' "

In 65 Corpus Juris, section 145, *supra,* with relation to the sufficiency of a complaint in trover and conversion, the text, supported by numerous authorities, states that a defect in pleading may be waived by failure to demur to the complaint, by trial of the case on the theory that the allegations of the pleading were adequate, and that the defective allegations may be cured by the rendering of a verdict or judgment. The text reads:

"Insufficiencies of a petition or declaration may be supplied by defendant's plea or answer, or may be waived by defendant's failure to demur, or by trial of the cause as though the proper allegations were in the pleading. And defects and insufficiencies of the declaration or petition may be cured by verdict."

We think it is apparent from the record that both parties assumed throughout the trial that the complaint adequately alleged plaintiff's ownership and right of possession of the truck and trailer in question. The defendant waived that technical defect with respect to that count. The other counts adequately allege that fact. The defendant was not prejudiced by that defect. (*Treanor* v. *Houghton,* 103 Cal. 53 [36 P. 1081]; *Spreckels* v. *Gorrill,* 152 Cal. 383 [92 P. 1011]; *Webb* v. *Jones,* 88 Cal.App. 20, 30 [263 P. 538].)

But we are of the opinion the findings are otherwise inadequate to support the judgment to the effect that the indebtedness due to defendant is equal only to the determined damages to which plaintiff is entitled on account of the asserted conversion of the properties; the findings fail to determine the amount of damages incurred on account of the alleged loss of use of the trucks and trailers; the findings appear to be irreconcilably conflicting upon material issues; they fail to support the judgment which is based on the theory of

unlawful conversion of the properties, and there was no allegation or proof that plaintiff demanded a return of the properties as a necessary prerequisite to the maintenance of the action for conversion.

Regarding the alleged conversion of the 1939 truck and trailer, it appears without conflict that they were insured in the name of the defendant because the previous insurance in plaintiff's name had been revoked and he was unable to procure insurance in his name; the defendant held a power of attorney authorizing him to transfer the certificates of ownership thereof; plaintiff instructed his driver of the vehicles to go to the defendant if he needed repairs on the machines or money to pay for such repairs; on November 14, 1946, that truck and trailer were involved in a railroad crossing collision which seriously damaged the machines; plaintiff was present and instructed the wrecking crew of a repair shop to remove the cars from the track; plaintiff was present when they were removed without objection and towed to the shop in Fresno for repairs; with plaintiff's knowledge and consent the defendant incurred the obligation to pay for those repairs. The insurance company had also demanded that he pay the sum of $500 in addition to the sum of $1,534.86 already paid for its insurance premiums. Insofar as the record shows, that truck and trailer were never removed from the Fresno repair shop. The proprietor of that shop had a lien on the machines for payment of the repairs. The plaintiff never demanded of the defendant a delivery to him of the vehicles. There appears to be a lack of evidence that the defendant converted or appropriated to his own use the 1939 truck or trailer. The plaintiff's conduct and statements indicate that he not only knew the machines were to be taken to the shop for repairs to be paid for by the defendant, but he approved the entire transaction and failed to demand possession of the machines.

With respect to the 1941 truck and trailer it appears that plaintiff's driver voluntarily drove them to the defendant's home on October 12th and left them there in his custody for the purpose of having certain repairs made; that plaintiff knew the machines were there, for he talked with the defendant about them and never thereafter sought or demanded recovery of possession of the property. In fact, plaintiff conceded that he voluntarily left them with the defendant with the agreement that defendant would purchase them for an agreed sum of $5,000 which he would pay by depositing that

sum with the bank for credit on plaintiff's debt to the bank, for security of which debt the bank held a chattel mortgage, and which indebtedness was guaranteed by the defendant. That evidence appears to refute the theory that the defendant unlawfully converted or appropriated to his own use that truck and trailer.

█ While it is true that when property comes into the possession of a bailee or other person tortiously or unlawfully, or when demand for possession thereof by the owner would be futile, a demand, as a necessary prerequisite to the maintenance of a suit for conversion, is not necessary. But when the defendant lawfully acquires possession of property with consent of the owner, demand for its possession is necessary to create a liability for conversion or unlawful withholding of the property. (*Weinberg* v. *Dayton Storage Co.*, 50 Cal.App. 2d 750, 757 [124 P.2d 155] ; *Atwood* v. *Southern California Ice Co.*, 63 Cal.App. 343 [218 P. 283] ; 24 Cal.Jur. § 10, p. 1032; 26 R.C.L. § 33, p. 1122.) We are of the opinion that, under the circumstances of this case, demand for possession of the property by plaintiff was necessary to create a liability for conversion on the part of the defendant. No such demand was made.

█ We think the defendant was entitled to distinct findings upon the separate issues as to the values of the trucks and trailers and grape tanks and upon the loss sustained by plaintiff by being deprived of their use. The court found that each of the separate allegations of alleged values was untrue. It merely found that the aggregate values amounted to the sum of $13,703.40. █ Ordinarily each party is entitled to specific findings on every material issue presented by the pleadings.

█ The most flagrant omission or inconsistency of the findings appears in the fact that the defendant was not given credit for the full amount of plaintiff's indebtedness to him, as determined by the court in both its findings and judgment. In paragraph II of the findings the court determined that the total value of the properties converted was $13,703.40, "which amount includes the sum of $2,654.85 repaid by plaintiff to the defendant Heinrich for advances made by the latter for the use and benefit of the plaintiff and for repair and upkeep of the equipment." If we understand the purport of that finding, it means that the total value of the property converted was the difference between those two amounts, or the sum of $11,046.28. Yet in paragraph IV of the findings the court

determined that the plaintiff is indebted to said defendant in the total sum of $13,703.40, "after crediting upon the total indebtedness the sum of $2,411.43, in the hands of the cross-defendant, Underwriters at Lloyd's, London." It appears that the last-mentioned sum of $2,411.43 was the amount of damages due from the insurer of the 1939 truck and trailer on account of the damage sustained in the railroad crossing collision. If that sum should also be charged to the plaintiff, as the court indicated that it should, then it should be added to the value of the properties determined, to ascertain the total amount of plaintiff's indebtedness, which would amount to $16,114.83. The difference between those aggregate sums of indebtedness to defendant and his liabilities amounts to several thousand dollars, for which the defendant was given neither credit nor a judgment. The total value of the properties, the titles to which were quieted in the defendant without foreclosure of the chattel mortgage or order of sale, was inadequate to offset or compensate plaintiff's indebtedness to the defendant. The findings are therefore conflicting, inadequate and uncertain, and the judgment is not supported by the findings.

In view of the necessity of reversing the judgment, upon defendant's appeal, for the foregoing reasons, it is unnecessary to further consider plaintiff's assigned grounds for reversal. Both parties seek a reversal of the judgment.

The judgment is reversed and the cause is remanded. Each party shall pay his own costs of appeal.

Adams, P J., and Peek, J., concurred.